**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

| | |
|---|---|
| RODERICK VEAZEY, TRACY BUSSELL, DENISE EMERY, BRENDA GILPATRICK, WILLIAM HENRY, ROGER JACKSON, PAMELA LAZAROFF, and KEVIN MCCOY, KEVIN STONE, individually and on behalf of all others similarly situated, | Case No. |
| | CLASS ACTION COMPLAINT |
| | JURY TRIAL DEMANDED |
| *Plaintiffs,* | |
| v. | |
| NATIONSBENEFITS, LLC, | |
| *Defendant.* | |

Plaintiffs Roderick Veazey ("Plaintiff Veazey"), Tracey Bussell ("Plaintiff Bussell"),

Denise Emery ("Plaintiff Emery"), Brenda Gilpatrick ("Plaintiff Gilpatrick"), William Henry

("Plaintiff Henry"), Roger Jackson ("Plaintiff Jackson"), Pamela Lazaroff ("Plaintiff Lazaroff"),

Kevin McCoy ("Plaintiff McCoy"), and Kevin Stone ("Plaintiff Stone" and collectively with

Plaintiffs Veazey, Bussell, Emery, Gilpatrick, Jackson, Lazaroff, McCoy, and Stone,

"Plaintiffs"), on behalf of themselves and all others similarly situated,[1] asserts the following

against NationsBenefits Holdings, LLC ("NationsBenefits" or "Defendant"), based upon

personal knowledge, where applicable, information and belief, and the investigation of counsel.

## INTRODUCTION

1.      Plaintiffs bring this class action against NationsBenefits for its (i) failure to

properly secure and safeguard highly valuable, protected personally identifiable information,

including without limitation, names, addresses, emails, phone numbers, health plan account and

---

[1] Members of the Nationwide Class and the state subclasses defined below are referred to collectively herein as "Class Members".

id numbers, date of birth, Medicare numbers, and Social Security numbers, and private health information (collectively "Private Information"); (ii) failure to comply with industry standards to protect information systems that contain Private Information; (iii) unlawful disclosure of the Private Information of Plaintiffs and other members of the class; and (iv) failure to provide adequate notice to Plaintiffs and other members of the class that their Private Information had been disclosed and compromised.

2.      NationsBenefits provides plan administration services, supplemental benefits, flex cards, and member engagement solutions to its clients, which include health insurers and managed care organizations.

3.      In the course of providing these services, NationsBenefits obtains, uses, and transmits the highly sensitive personal information of the members/clients of NationsBenefits' clients.

4.      NationsBenefits failed, however, to adequately safeguard this sensitive, valuable Private Information and, between January 28, 2023 and January 30, 2023, NationsBenefits allowed the Private Information of Plaintiffs and millions of other individuals to be accessed and exfiltrated by an unauthorized third-party (the "Data Breach").

5.      Despite the occurrence of the Data Breach in January 2023, NationsBenefits did not begin notifying impacted individuals such as Plaintiffs and Class Members until April 27, 2023. This delay deprived Plaintiffs and Class Members of the opportunity to take meaningful steps to mitigate the impact of the Data Breach.

6.      The value of Plaintiffs' and Class Members' stolen data, including Private Information, is recognized by many different constituencies. First, the value is recognized by the NationsBenefits itself. Second, the value is recognized by the cybercriminals who exfiltrated the

for purposes of selling it to others who intend to data to commit identity theft and fraud. And third, the value is recognized by the individuals, themselves, including Plaintiffs and Class Members, whose Private Information was stolen.

7. As a result, Plaintiffs and Class Members are at substantially increased risk of identity theft, both currently and for the indefinite future. Plaintiffs' and Class Members' Private Information—including their names linked with their dates of birth, health plan identification numbers, Medicare identification numbers, and Social Security numbers which were compromised by cyber criminals in the Data Breach—is highly valuable to bad actors who may seek to commit fraud and identity theft.

8. Plaintiffs, on behalf of themselves and all others similarly situated, bring claims for negligence, negligence *per se*, breach of implied contract, unjust enrichment, breach of confidence, invasion of privacy— intrusion upon seclusion, violations of consumer protection statutes of their home states, violations of data protection statutes of their home states, and injunctive relief claims.

9. Plaintiffs seek damages and injunctive relief requiring NationsBenefits to adopt reasonably sufficient practices to safeguard the Private Information in NationsBenefits' custody and control in order to prevent incidents like the Data Breach from recurring.

10. Given that information relating to the Data Breach, including the systems that were impacted and the configuration and design of NationsBenefits' systems remain exclusively in NationsBenefits' control, Plaintiffs anticipate that additional information in support for their claims will emerge during discovery.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C § 1332(d), because the amount in controversy for the Class and Subclasses exceeds $5,000,000 exclusive of interest and costs, there are more than 100 putative Members of the Class and Subclass defined below, and a significant portion of putative Class and Subclass Members are citizens of a different state than NationsBenefits.

12.     This Court has personal jurisdiction over NationsBenefits because NationsBenefits is a resident of the State of Florida.

13.     This Court also has specific personal jurisdiction over NationsBenefits related to this action because Plaintiffs' claims arise out of NationsBenefits' contacts business in this state and district.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## PARTIES

15.     Plaintiff Roderick Veazey is a resident of Florida. Plaintiff Veazey received a letter dated April 27, 2023 from NationsBenefits informing him that his Private Information was compromised in the Data Breach. As set forth below, because the Data Breach compromised Plaintiff's name, address, phone number, date of birth, gender, health plan subscriber ID number, Social Security number, and/or Medicare number, Plaintiff Veazey faces a substantial and imminent risk of fraud and identity theft. Indeed, since the data Breach occurred, Plaintiff Veazey was notified by a financial institution he is a customer of that his email and password had been compromised and appeared on the dark web.

16.     Plaintiff Tracy Bussell is a resident of Illinois. Plaintiff Bussell received a letter dated April 27, 2023 from NationsBenefits informing him that his Private Information was compromised in the Data Breach.  As set forth below, because the Data Breach compromised Plaintiff Bussell's name, address, phone number, date of birth, gender, health plan subscriber ID number, Social Security number, and/or Medicare number, Plaintiff Bussell faces a substantial and imminent risk of fraud and identity theft. Indeed, Plaintiff Bussell has experienced a substantial increased in phishing attempts via telephone, and has been forced to install software in an attempt mitigate this increase.

17.     Plaintiff Denise Emery is a resident of Texas. Plaintiff Emery received a letter dated April 27, 2023 from NationsBenefits informing her that her Private Information was compromised in the Data Breach. As set forth below, because the Data Breach compromised Plaintiff Emery's name, address, phone number, date of birth, gender, health plan subscriber ID number, Social Security number, and/or Medicare number, Plaintiff Emery faces a substantial and imminent risk of fraud and identity theft.  Indeed, since the Data Breach occurred, Plaintiff Emery has experienced an increase in phishing attempts and spam texts and telephone calls.

18.     Plaintiff Brenda Gilpatrick is a resident of Georgia. Plaintiff Gilpatrick received a letter dated April 27, 2023 from NationsBenefits informing her that her Private Information was compromised in the Data Breach. As set forth below, because the Data Breach compromised Plaintiff Gilpatrick's name, address, phone number, date of birth, gender, health plan subscriber ID number, Social Security number, and/or Medicare number, Plaintiff Gilpatrick faces a substantial and imminent risk of fraud and identity theft. Indeed, in the nearly three months since the Data Breahc, Plaintiff Gilpatrick has experienced a substantial increase in Medicare phishing and spam calls. As a self-employed professional that must answer each call, this time has taken

her away from time she could otherwise devote to client matters. Additionally, Plaintiff Gilpatrick has expended time monitoring her credit reports.

19.     Plaintiff William Henry is a resident of Washington. Plaintiff Henry received a letter dated April 27, 2023 from NationsBenefits informing him that his Private Information was compromised in the Data Breach. As set forth below, because the Data Breach compromised Plaintiff Henry's name, address, phone number, date of birth, gender, health plan subscriber ID number, Social Security number, and/or Medicare number, Plaintiff Henry faces a substantial and imminent risk of fraud and identity theft. Indeed, since the Data Breach occurred, Plaintiff Henry has been notified by Experian that his email and password has been found on the dark web.

20.     Plaintiff Roger Jackson is a resident of Connecticut. Plaintiff Jackson received a letter dated April 27, 2023 from NationsBenefits informing him that his Private Information was compromised in the Data Breach.  As set forth below, because the Data Breach compromised Plaintiff Jackson's name, address, phone number, date of birth, gender, health plan subscriber ID number, Social Security number, and/or Medicare number, Plaintiff Jackson faces a substantial and imminent risk of fraud and identity theft.

21.     Plaintiff Pamela Lazaroff is a resident of Arkansas. Plaintiff Lazaroff received a letter dated April 27, 2023 from NationsBenefits informing her that her Private Information was compromised in the Data Breach. As set forth below, because the Data Breach compromised Plaintiff Lazaroff's name, address, phone number, date of birth, gender, health plan subscriber ID number, Social Security number, and/or Medicare number, Plaintiff Lazaroff faces a substantial and imminent risk of fraud and identity theft.  Indeed, since the Data Breach

occurred, Plaintiff Lazaroff has experienced an increase in phishing attempts and spam texts and telephone calls.

22.     Plaintiff Kevin McCoy is a resident of Illinois. Plaintiff McCoy received a letter dated April 27, 2023 from NationsBenefits informing him that his Private Information was compromised in the Data Breach.  As set forth below, because the Data Breach compromised Plaintiff Jackson's name, address, phone number, date of birth, gender, health plan subscriber ID number, Social Security number, and/or Medicare number, Plaintiff Jackson faces a substantial and imminent risk of fraud and identity theft. Additionally, Plaintiff McCoy was forced to expend time and effort setting up credit monitoring, freezing his credit on his account as well as his spouse's, and notifying his financial institutions of the Data Breach.

23.     Plaintiff Kevin Stone is a resident of Texas. Plaintiff Stone received a letter dated April 27, 2023 from NationsBenefits informing him that his Private Information was compromised in the Data Breach as a result of United Auto Workers Retiree Medical Benefits Trust providing his information to NationsBenefits.  As set forth below, because the Data Breach compromised Plaintiff Stone's name, address, phone number, date of birth, gender, health plan subscriber ID number, Social Security number, and/or Medicare number, Plaintiff Stone faces a substantial and imminent risk of fraud and identity theft. Indeed

24.     NationsBenefits, LLC ("NationsBenefits") is Florida limited liability company with its principal place of business located at 1801 NW 66th Ave, Suite 100, Plantation, FL 33313.

**FACTUAL ALLEGATIONS**

I. **NATIONSBENEFITS COLLECTED, STORED, AND USED THE PERSONAL INFORMATION OF PLAINTIFFS AND MEMBERS OF THE CLASS**

25.     NationsBenefits describes itself as "a leading provider of supplemental benefits, flex cards, and member engagement solutions that partners with managed care organizations to provide innovative healthcare solutions designed to drive growth, improve outcomes, reduce costs, and delight members."[2]

26.     NationsBenefits claims it is "committed to helping millions of members across the U.S. achieve a better quality of life through innovative supplemental benefit solutions."

27.     NationsBenefits provides these services through a "comprehensive suite of innovative supplemental benefits, payments platform, and member engagement solutions [which] help health plans deliver high quality benefits to their members that help address social determinants of health and improve member health outcomes and satisfaction."[3]

28.     NationsBenefits boasted that it provides these services via its "compliance-focused infrastructure" and "proprietary technology systems":

> Our compliance-focused infrastructure, proprietary technology systems, and premier service delivery model allow our health plan partners to deliver high quality, value-based care to millions of members.[4]

---

[2] https://www.nationsbenefits.com/about-us
[3] https://www.nationsbenefits.com/about-us
[4] https://www.nationsbenefits.com/about-us

29.     To provide these services, NationsBenefits collects, stores, and uses the Private Information of individuals through a variety of ways, including, upon information and belief, from the health insurers and managed care organizations such as Aetna, Elevance, and United Auto Workers ("UAW") directly.

30.     To use NationsBenefits' services, individuals such as Plaintiffs and members must provide NationsBenefits with sensitive Private Information, which NationsBenefits collects, stores, and uses to provide services. NationsBenefits thus additionally receives Private Information *directly from members and customers* of the health insurers and managed care organizations that hire NationsBenefits. In fact, Plaintiffs and Class Members often *have no choice* but to provide NationsBenefits with sensitive Private Information in order to receive the member benefits they are entitled to.

31.     One example of a NationsBenefits Service is the NationsBenefits OTC mobile app, which allows individuals to use their health insurance or benefit plans "to purchase medications, health and wellness items, and first-aid supplies with home delivery at no additional cost":



32.    NationsBenefits also provides Personalized Member Portals to members and customers of the insurers and managed care organizations that hire NationsBenefits.



33.    As shown in the screenshot above, use of these portals by individuals such as Plaintiffs and Class Memberses are required for them to obtain certain benefits, such as

---

[5] https://aetna.nationsbenefits.com/login

purchasing products online with plan benefit dollars ("This Portal is the *exclusive way* to order products online with your benefit dollars")(emphasis added):



34.    Plaintiffs and Class Members reasonably relied on NationsBenefits to keep their Private Information confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

35.    Plaintiffs and Class Members also relied on NationsBenefits to ensure that NationsBenefits held vendors with whom NationsBenefits shared sensitive Private Information to the same high standards of data protection.

36.    NationsBenefits had duties to adopt reasonable measures to protect the Private Information of Plaintiffs and Class Members from involuntary disclosure to third parties.

## II.    NATIONSBENEFITS ALLOWED THE PERSONAL INFORMATION OF PLAINTIFFS AND MEMBERS OF THE CLASS TO BE COMPROMISED IN A DATA BREACH

37.    To provide the services outlined above and others NationsBenefits used, *inter alia,* software provided by third-party vendor Fortra, LLC ("Fortra") to transfer files containing the Private Information of Plaintiffs and Class Members.

38.    Unfortunately for Plaintiffs and Class Members, from January 28, 2023 through January 30, 2023, an unauthorized third-party hacker group began accessing and exfiltrating the

Private Information of Plaintiffs and Class Members via an exploit in the Fortra software (the "Data Breach").

39.     NationsBenefits became aware of the Data Breach on February 7, 2023, yet Plaintiffs and Class Members were not notified of the Data Breach until April 27, 2023, when NationsBenefits mailed out notification letters to individuals whose information had been compromised. Most individuals did not receive the letters until early May. This nearly three-month delay deprived Plaintiffs and Class Members of the ability to take steps to mitigate the damages caused by the Data Breach.

40.     Below are relevant excerpts from the letters sent to Aetna members whose information was compromised in the breach:[6]

> NationsBenefits Holding, LLC, and its affiliates and subsidiaries (collectively, "NationsBenefits" or "we"), provides benefits administration services to your health insurer, [client_name]. We place a high value on maintaining the privacy and security of the information we maintain for our health plan customers. Regrettably, this letter is to inform you that a vendor we used to exchange files with Aetna[7] was recently the victim of a cybersecurity attack, which impacted some of your personal information. We notified Aetna of this incident on February 9, 2023. This letter explains the incident, the measures we have taken in response and the steps you can take.
>
> What Happened? NationsBenefits used software provided by a third-party vendor, Fortra, LLC ("Fortra"), to securely exchange files with your health plan. On or around January 30, 2023, Fortra experienced a data security incident in which a malicious actor(s) accessed or acquired the data of multiple organizations, including NationsBenefits. When we learned of this incident on February 7, 2023, we immediately took steps to secure our systems and launched an investigation, which was conducted by an experienced outside law firm and a leading cybersecurity firm. As part of our investigation, NationsBenefits analyzed the impacted data to determine whether any individual's personal information was subject to unauthorized access or acquisition. On February 23, 2023, NationsBenefits confirmed that, unfortunately, some of your personal information was affected by the incident.

---

[6] Although this excerpt is from letters sent to Aetna members, letters sent to impacted individuals who are members and/or customers of other health insurers or managed care organization were substantially identical.
[7] https://www.hipaajournal.com/nationsbenefits-holdings-confirms-3-million-record-data-breach/; *see also* https://ocrportal.hhs.gov/ocr/breach/breach_report.jsf

41.     NationsBenefits' filing with the U.S. Department of Health and Human Services ("HHS") and public reporting has revealed that the Private Information "3,037,303 health plan members, including, but not limited to, Aetna ACE, Elevance Health Flexible Benefit Plan, and UAW Retiree Medical Benefits Trust" was compromised in the Data breach and that "[t]he compromised information included: first and last name, address, phone number, date of birth, gender, health plan subscriber ID number, Social Security number, and/or Medicare number"[8]

42.     NationsBenefits' filing with the Office of the Maine Attorney General has further confirmed that the Private Information compromised in the Data Breach includes names and other personal identifiers in "in combination with" Social Security Number(s).[9]

### III.   NATIONSBENEFITS FAILED TO FULFILL ITS OBLIGATION TO PROTECT THE SENSITIVE PERSONAL INFORMATION OF PLAINTIFFS CLASS MEMBERS.

43.     Given the sensitive nature of the Private Information Plaintiffs and other Class Members entrusted to NationsBenefits, NationsBenefits knew, or should have known, that hackers and cybercriminals would be able to commit identity theft, financial fraud, phishing, socially engineered attacks, healthcare fraud, and other identity-related fraud if they were able to exfiltrate that data from NationsBenefits' systems. NationsBenefits also knew that individuals whose Private Information was stored on their computer systems would be reasonable in spending time and effort to mitigate their damages and prevent identity theft and fraud if that data were exfiltrated.

44.     Given that NationsBenefits was on notice that it was maintaining highly valuable data, for which NationsBenefits knew there was a risk that they would be targeted by cybercriminals and knew of the extensive harm that would occur if Plaintiffs' and Class

---

[8] https://www.hipaajournal.com/nationsbenefits-holdings-confirms-3-million-record-data-breach/
[9] https://apps.web.maine.gov/online/aeviewer/ME/40/764dec53-ed17-4732-9d8b-111239af9176.shtml

Members' Private Information was exposed through a Data Breach, NationsBenefits owed a duty to safeguard that information.

45.     Because Plaintiffs and Class Members entrusted them with their Private Information, NationsBenefits had a special relationship with Plaintiffs and Class Members, which provided an independent duty of care. NationsBenefits owed a duty to use reasonable security measures because they undertook to collect, store and use customers' Private Information. In addition, NationsBenefits had a duty to require and ensure that Fortra would use reasonable security measures because it disclosed that same Private Information to Fortra.

46.     Accordingly, NationsBenefits are liable to Plaintiffs and the class for the compromise and unauthorized disclosure of Plaintiffs' and Class Members' Private Information.

## IV.     NATIONSBENEFITS FAILED TO COMPLY WITH REGULATORY AND INDUSTRY STANDARDS.

47.     Because of the value of Private Information to hackers and identity thieves, companies in the business of obtaining, storing, maintaining, and securing Private Information, such as NationsBenefits, have been identified as being particularly vulnerable to cyber-attacks. Cybersecurity firms have promulgated a series of best practices that at minimum should be implemented by sector participants including, but not limited to: installing appropriate malware detection software; monitoring and limiting network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.[10] Organizations, companies, and banks—like NationsBenefits—have an added incentive to harden their networks against

---

[10] *See Addressing BPO Information Security: A Three-Front Approach*, DATAMARK, Inc. (Nov. 2016), https://insights.datamark.net/addressing-bpo-information-security/ [https://perma.cc/NY6X-TFUY].

unauthorized penetration, because they directly control the data necessary to access consumers'
financial accounts.

48.     Further, federal and state governments have likewise established security
standards and issued recommendations to reduce the number and size of data breaches and the
resulting harm to consumers and financial institutions. The FTC has issued numerous guides for
businesses, highlighting the importance of reasonable data and cyber security practices.
According to the FTC, the need for data and cyber security should be factored into all business
decision-making.[11]

## A.  FTC GUIDANCE AND INDUSTRY STANDARDS

49.     NationsBenefits is prohibited by the Federal Trade Commission Act, 15 U.S.C. §
45 ("FTC Act") from engaging in "unfair or deceptive acts or practices in or affecting
commerce." The Federal Trade Commission ("FTC") has concluded that a company's failure to
maintain reasonable and appropriate data security for consumers' sensitive personal information
is an "unfair practice" in violation of the FTC Act.

50.     In 2016, the FTC updated its publication, *Protecting Private Information: A
Guide for Business*, which established guidelines for fundamental data and cyber security
principles and practices for business.[12] The guidelines note businesses should protect the
personal customer and consumer information that they keep; properly dispose of personal
information that is no longer needed; encrypt information stored on computer networks;
understand their network's vulnerabilities; and implement policies to correct security problems.[13]

---

[11] *Start with Security: A Guide for Business* at 2, FTC (June 2015),
https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf.
[12] *Protecting Private Information: A Guide for Business*, FTC (Oct. 2016), https://www.ftc.gov/tips-advice/business-
center/guidance/protecting-personal-information-guide-business [https://perma.cc/9945-U4HV].
[13] *Id.*

The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[14]

51.     The FTC recommends that companies limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and (most pertinent here) verify that third-party service providers have implemented reasonable security measures.

52.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

53.     NationsBenefits also has obligations created by other federal and state laws and regulations, contracts, industry standards, and common law to maintain reasonable and appropriate physical, administrative, and technical measures to keep Plaintiffs' and Class Members' Private Information confidential and to protect it from unauthorized access and disclosure.

54.     Given the magnitude of the risk and repercussions of a data breach or attack targeting this type of data, the likelihood of a data breach or attack, and NationsBenefits' explicit awareness of these vulnerabilities, NationsBenefits should have taken every reasonable

---

[14] *Id.*

precaution in developing a robust security program and protecting Plaintiffs' and the Class Members' Private Information.

55. Yet, despite their duties, representations, and promises, NationsBenefits failed to adequately secure and protect their customers' data, allowing the Plaintiffs' and Class Members' Private Information to be accessed, disclosed, and misused.

56. NationsBenefits also owed a duty to comply with industry standards in safeguarding Private Information, which—as discussed herein—they did not do.

57. Cyberattacks have become so notorious that the FBI and Secret Service issued an unprecedented warning in 2019 to potential targets so they were aware of, and prepared for, a potential attack.[15]

58. The U.S. government, various U.S. and international law enforcement agencies, cybersecurity industry groups and laboratories, and numerous industry trade groups have issued warnings and guidance on managing and mitigating phishing and ransomware threats. There are industry best practices for cybersecurity related to phishing and ransomware, some of which are particularly effective.

59. For example, in 2019, both Microsoft and Google publicly reported that using multi-factor authentication ("MFA") blocks more than 99% of automated hacks, including most ransomware attacks that occur because of unauthorized account access. Likewise, the reputable SANS Software Security Institute issued a paper stating "[t]ime to implement multi-factor authentication!"[16] An example of MFA implementation is receiving a text with a code when you

---

[15] Kochman, *supra* n.171.
[16] Matt Bromiley, *Bye Passwords: New Ways to Authenticate* at 3, SANS Software Security Inst. (July 2019), https://query.prod.cms.rt.microsoft.com/cms/api/am/binary/RE3y9UJ [https://perma.cc/ZSW9-QUEW]. Matt Bromiley, *Bye Passwords: New Ways to Authenticate* at 3, SANS Software Security Inst. (July 2019), https://query.prod.cms.rt.microsoft.com/cms/api/am/binary/RE3y9UJ [https://perma.cc/ZSW9-QUEW].

input your username and password into a website; even if a cybercriminal knew your username and password, the cybercriminal would not be able to see the code on your phone and would thus be blocked from accessing your online account.

60. In this regard, implementing MFA "can block over 99.9 percent of account compromise attacks."[17]

61. Yet, instead of following these widely adopted industry standards, NationsBenefits failed to adequately secure and protect their customers' data, allowing the Plaintiffs' and Class Members' Private Information to be accessed, disclosed, and misused.

## V. THE VALUE OF THE COMPROMISED PRIVATE INFORMATION AND EFFECTS OF UNAUTHORIZED DISCLOSURE.

62. NationsBenefits understands the protected Private Information it acquires, stores, and utilizes is highly sensitive and of significant value to the owners of the Private Information and those who would use it for wrongful purposes.

### A. THE VALUE OF PRIVATE INFORMATION

63. Private Information is property with inherent and sizeable market value. Its value is axiomatic, considering the market value and profitability of "Big Data" corporations in America. Alphabet Inc., the parent company of Google, aptly illustrated this in its 2020 Annual Report, when it reported a total annual revenue of $182.5 billion and net income of $40.2 billion.[18] $160.7 billion of this revenue was derived from its Google business, which is driven almost exclusively by leveraging the Private Information it collects about the users of its various

---

[17] *What Is Multi-Factor Authentication (MFA)?*, Consensus Techs. (Sept. 16, 2020), https://www.concensus.com/what-is-multi-factor-authentication/#:~:text=The%20proof%20 that%20MFA%20works,percent%20of%20account%20compromise%20attacks [https://perma.cc/RKT2-LX5Z].
[18] Alphabet Inc., Annual Report (Form 10-K) at 32 (Feb. 3, 2021), https://www.sec.gov/ix?doc=/Archives/edgar/data/0001652044/000165204421000010/goog-20201231.htm.

free products and services. America's largest corporations profit almost exclusively through the use of Private Information illustrating the considerable market value of Private Information.

64.     Criminal law also recognizes the value of Private Information and the serious nature of the theft of such an asset by imposing prison sentences. This strong deterrence is necessary because cybercriminals earn significant revenue through stealing Private Information. Once a cybercriminal has unlawfully acquired personal data, the criminal can demand a ransom or blackmail payment for its destruction, use the information to commit fraud or identity theft, or sell the Private Information to another cybercriminal on a thriving black market.

65.     Furthermore, Private Information is a valuable commodity to identity thieves, particularly when such data is aggregated in large numbers.  Former United States Attorney General William P. Barr made clear that consumers' sensitive personal information commonly stolen in data breaches "has economic value."  The purpose of stealing large caches of personal data is to use it to defraud individuals or to place it for illegal sale and to profit from other criminals who buy the data and use it to commit fraud and identity theft. Indeed, cybercriminals routinely post stolen personal information for sale on anonymous websites, making the information widely available to a criminal underworld.

66.     There is an active and robust market for this information. As John Sancenito, president of *Information Network Associates*, a company which helps companies with recovery after data breaches, explained after a data breach "[m]ost of the time what [data breach hackers] do is they steal the data and then they sell the data on the dark web to the people who actually commit the fraud."

67.     Thus, Plaintiffs and Class Members rightfully place a high value not only on their Private Information, but also on the privacy of that data.

68. Once stolen, Private Information can be used in a number of different ways. One of the most common is that it is offered for sale on the "dark web," a heavily encrypted part of the Internet that makes it difficult for authorities to detect the location or owners of a website. The dark web is not indexed by normal search engines such as Google and is only accessible using a Tor browser (or similar tool), which aims to conceal users' identities and online activity. The dark web is notorious for hosting marketplaces selling illegal items such as weapons, drugs, and Private Information. Websites appear and disappear quickly, making it a dynamic environment.

69. The forms of Private Information involved in this Data Breach are particularly concerning. Unlike credit or debit card numbers in a payment card data breach—which can quickly be frozen and reissued in the aftermath of a breach—unique Medicare ID numbers, health plan ID numbers, Social Security numbers cannot be easily replaced. Even when such numbers are replaced, the process of doing so results in a major inconvenience to the subject person, requiring a wholesale review of the person's relationships with government agencies and any number of private companies to update the person's accounts with those entities.

70. Indeed, even the Social Security Administration ("SSA") warns that the process of replacing a Social Security number is a difficult one that creates other types of problems, and that it will not be a panacea for the affected person:

> Keep in mind that a new number probably will not solve all your problems. This is because other governmental agencies (such as the IRS and state motor vehicle agencies) and private businesses (such as banks and credit reporting companies) likely will have records under your old number. Along with other personal information, credit reporting companies use the number to identify your credit record. So using a new number will not guarantee you a fresh start. This is especially true if your other personal information, such as your name and address, remains the same.

> If you receive a new Social Security Number, you should not be able to use the old number anymore.
>
> For some victims of identity theft, a new number actually creates new problems. If the old credit information is not associated with your new number, the absence of any credit history under the new number may make more difficult for you to get credit.

71.     Social Security numbers allow individuals to apply for credit cards, student loans, mortgages, and other lines of credit—among other services. Often Social Security numbers can be used to obtain medical goods or services, including prescriptions. They are also used to apply for a host of government benefits. Access to such a wide range of assets makes social security numbers a prime target for cybercriminals and a particularly attractive form of Private Information to steal and then sell.

## B.  DATA BREACHES PUT CONSUMERS AT INCREASED RISK OF FRAUD AND IDENTIFY THEFT.

72.     Cyberattacks and data breaches of financial services companies are especially problematic because of the potentially permanent disruption they cause to the daily lives of their customers. Stories of identity theft and fraud abound, with hundreds of millions of dollars lost by everyday consumers every year as a result of internet-based identity theft attacks.[19]

73.     The U.S. Government Accountability Office ("GAO") released a report in 2007 regarding data breaches finding that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[20]

74.     The FTC recommends that identity theft victims take several steps to protect their personal health and financial information after a data breach, including contacting one of the

---

[19] Albert Khoury, *Scam alert: 5 most costly data breaches (plus 5 states most targeted)* (July 27, 2022), https://www.komando.com/security-privacy/most-costly-data-breaches/847800/
[20] *Private Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown* ("GAO Report") at 2, GAO (June 2007), https://www.gao.gov/assets/270/262899.pdf [https://perma.cc/GCA5-WYA5].

credit bureaus to place a fraud alert (and to consider an extended fraud alert that lasts for seven years if identity theft occurs), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[21]

75. Cybercriminals use stolen Private Information such as Social Security numbers for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.

76. Identity thieves can also use Social Security numbers to obtain a driver's license or other official identification card in the victim's name, but with the thief's picture; use the victim's name and Social Security number to obtain government benefits; or file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's Social Security number, rent a house or receive medical services in the victim's name, seek unemployment or other benefits, and may even give the victim's Private Information to police during an arrest resulting in an arrest warrant being issued in the victim's name.

77. A study by the Identity Theft Resource Center ("ITRC") found that 96.7% of identity theft victims experienced costs and/or other harms from the criminal activity.[22] This includes devastating results such as "I lost my home/place of residence" and "I couldn't care for my family." Moreover, the harms of identity theft are not limited to the affected individual and may adversely impact other associated persons and support systems, including government assistance programs. In the ITRC study, nearly one third of survey respondents had to request

---

[21] *Identity Theft Recovery Steps*, FTC, https://www.identitytheft.gov/Steps (last visited Mar. 23, 2021) [https://perma.cc/ME45-5N3A].
[22] Jason Steele, *Credit Card and ID Theft Statistics*, Creditcards.com (updated Oct. 24, 2017), https://www.creditcards.com/credit-card-news/credit-card-security-id-theft-fraud-statistics-1276.php [https://web.archive.org/web/20171215215318/https://www.creditcards.com/credit-card-news/credit-card-security-id-theft-fraud-statistics-1276.php].

government assistance as a result of the identity theft, such as welfare, EBT, food stamps, or similar support systems.[23] The ITRC study concludes that "identity theft victimization has an extreme and adverse effect on each individual as well as all of the support systems and people associated with the individual."[24]

78.     The Private Information exfiltrated in the Data Breach can also be used to commit identity theft by placing Plaintiffs and Class Members at a higher risk of "phishing," "vishing," "smishing," and "pharming," which are other ways for cybercriminals to exploit information they already have in order to get even more personally identifying information from a person through unsolicited email, text messages, and telephone calls purportedly from a legitimate company requesting personal, financial, and/or login credentials.

79.     Private Information is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the cyber black market for years.

80.     It must also be noted there may be a substantial time lag—measured in years— between when harm occurs versus when it is discovered, and between when Private Information and/or financial information is stolen and when it is used. According to the GAO, which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[25]

---

[23] *Id.*
[24] *Id.*
[25] GAO Report, *supra* n.**Error! Bookmark not defined.**, at 29.

81.     Private Information is such an inherently valuable commodity to identity thieves that, once compromised, criminals often trade the information on the cyber black-market for years.

82.     Furthermore, data breaches that expose any personal data, and in particular non-public data of any kind (*e.g.*, donation history or hospital records), directly and materially increase the chance that a potential victim is targeted by a spear phishing attack in the future, and spear phishing results in a high rate of identity theft, fraud, and extortion.[26]

83.     There is a strong probability that entire batches of stolen information from the Data Breach have yet to be made available on the black market, meaning Plaintiffs and Class Members are at an increased risk of fraud and identity theft for many years into the future. Indeed, some of the Plaintiffs and many Class Members are in very early stages of their lives—in their twenties and thirties. Thus, as the respective Notices advise, Plaintiffs must vigilantly monitor their financial accounts for many years to come.

84.     NationsBenefits is a highly sophisticated party that regularly handles sensitive Private Information, yet it failed to establish and/or implement appropriate administrative, technical and/or physical safeguards to ensure the security and confidentiality of Plaintiffs' and other Class Members' Private Information to protect against anticipated threats of intrusion of such information.

85.     The ramifications of NationsBenefits' failure to keep Plaintiffs' and Class Members' Private Information secure are long lasting and severe. To avoid detection, identity

---

[26] *See* Kelion & Tidy, *supra* n.**Error! Bookmark not defined.** (concluding that personal information such as "names, titles, telephone numbers, email addresses, mailing addresses, dates of birth, and, more importantly, donor information such as donation dates, donation amounts, giving capacity, philanthropic interests, and other donor profile information . . . . in the hands of fraudsters, [makes consumers] particularly susceptible to spear phishing—a fraudulent email to specific targets while purporting to be a trusted sender, with the aim of convincing victims to hand over information or money or infecting devices with malware").

thieves often hold stolen data for months or years before using it. Also, the sale of stolen information on the "dark web" may take months or more to reach end-users, in part because the data is often sold in small batches as opposed to in bulk to a single buyer. Thus, Plaintiffs and Class Members must vigilantly monitor their financial accounts *ad infinitum*.

86.     Thus, NationsBenefits knew, or should have known, the importance of safeguarding the Private Information entrusted to it and of the foreseeable consequences if its systems were breached. NationsBenefits failed, however, to take adequate cybersecurity measures to prevent the Data Breach from occurring.

87.     Thus, Plaintiffs and Class Members are at an increased risk of fraud and identity theft for many years into the future.

## VI.     THE DATA BREACH DAMAGED PLAINTIFFS AND CLASS MEMBERS.

88.     As a result of NationsBenefits' deficient security and monitoring measures, Plaintiffs and Class Members have been harmed by the compromise of their sensitive personal information, which is currently for sale on the dark web and through private sale to other cyber criminals and/or being used by criminals for identify theft and other fraud-related crimes.

89.     Plaintiffs and Class Members face a substantial and imminent risk of fraud and identity theft as their names have now been linked with their Social Security numbers, bank account numbers, emails, phone numbers, and physical addresses as a result of the Data Breach. These specific types of information are associated with a high risk of fraud.

90.     Plaintiffs and Class Members also suffered a "loss of value" of their sensitive personal information when it was stolen by hackers in the Data Breach. A robust market exists for stolen personal information. Hackers sell personal information on the dark web—an underground market for illicit activity, including the purchase of hacked personal information—

at specific identifiable prices. This market serves to determine the loss of value to Plaintiffs and Class Members.

91.     As discussed above, Plaintiffs' and Class Members' stolen personal information is a valuable commodity to identity thieves.

92.     Identity thieves can also combine data stolen in the Data Breach with other information about Plaintiffs and Class Members gathered from underground sources, public sources, or even Plaintiffs' and Class Members' social media accounts. Thieves can use the combined data to send highly targeted phishing emails to Plaintiffs and Class Members to obtain more sensitive information. Thieves can use the combined data to commit potential crimes, including opening new financial accounts in Plaintiffs' and Class Members' names, taking out loans in Plaintiffs' and Class Members' names, using Plaintiffs' and Class Members' information to obtain government benefits, filing fraudulent tax returns using Plaintiffs' and Class Members' information, obtaining Social Security numbers in Plaintiffs' and Class Members' names but with another person's photograph, and giving false information to police during an arrest.

93.     Plaintiffs and Class Members also suffered "benefit of the bargain" damages. Plaintiffs and Class Members overpaid for services that should have been—but were not—accompanied by adequate data security. Part of the interest and fees paid by Plaintiffs and Class Members to NationsBenefits was intended to be used to fund adequate data security. Plaintiffs and Class Members did not get what they paid for.

94.     Plaintiffs and Class Members have spent and will continue to spend substantial amounts of time monitoring their accounts for identity theft and fraud, the opening of fraudulent

accounts, disputing fraudulent transactions, and reviewing their financial affairs more closely than they otherwise would have done but for the Data Breach.

95.     Plaintiffs and Class Members may also incur out of pocket costs for protective measures such as identity theft protection, credit monitoring fees, credit report fees, credit freeze fees, fees for replacement cards, and similar costs related to the Data Breach.

96.     Class Members who experience actual identity theft and fraud will also be harmed by the inability to use their credit or debit cards when their accounts are suspended or otherwise rendered unusable due to fraudulent charges. To the extent Class Members are charged monthly/annual fees for their credit and/or debit accounts, they are left without the benefit of that bargain while they await receipt of their replacement cards. Class Members will be harmed further by the loss of rewards points or airline mileage that they cannot accrue while awaiting replacement cards. The inability to use payment cards may also result in missed payments on bills and loans, late charges and fees, and adverse effects on their credit, including decreased credit scores and adverse credit notations.

97.     In the case of a data breach, merely reimbursing a consumer for a financial loss due to identity theft or fraud does not make that individual whole again. On the contrary, after conducting a study, the Department of Justice's Bureau of Justice Statistics ("BJS") found that "among victims who had personal information used for fraudulent purposes, 29% spent a month or more resolving problems."

98.     A victim whose personal information has been stolen or compromised may not see the full extent of identity theft or fraud until long after the initial breach. Additionally, a victim whose personal information (including Social Security numbers) has been stolen may not become

aware of charges when they are nominal, as typical fraud-prevention algorithms may not capture such charges. Those charges may be repeated, over and over again, on a victim's account.

99.      The risk of identity theft and fraud will persist for years. Identity thieves often hold stolen data for months or years before using it to avoid detection. Also, the sale of stolen information on the dark web may take months or more to reach end-users, in part because the data is often sold in small batches to various individuals rather than in bulk to a single buyer. Thus, Plaintiffs and Class Members must vigilantly monitor their financial accounts *ad infinitum*.

**VII.    NATIONSBENEFITS' FAILURE TO NOTIFY PLAINTIFFS AND CLASS MEMBERS IN A TIMELY OR ADEQUATE FASHION EXACERBATED THE DAMAGE.**

100.     As detailed above, NationsBenefits has stated it learned of the Data Breach on Febuary 7, 2023 yet failed to even *begin* notifying Plaintiffs and Class Members until April 27, 2023 via U.S. Mail.

101.     First, NationsBenefits appears to have chosen to notify individuals *only* via U.S. mail even though NationsBenefits possesses contact information for each and every customer it knows which is likely more effective at reaching those individuals than U.S. mail.

102.     Second, the period of almost three months during which NationsBenefits sat on the information could have been used by Plaintiffs and Class Members to take steps to mitigate the damage caused by the Data Breach.

103.     Instead, and to protect its own financial interests, NationsBenefits concealed the Data Breach for almost three months, allowing the unauthorized third-party to potentially exploit Plaintiffs' and Class Members' Private Information without any mitigation steps being taken. NationsBenefits did this despite *knowing that the information was in possession of had actors*

*looking to exploit the Private Information for profit*, a fact NationsBenefits knew upon discovery of the Data Breach.

104.    Plaintiffs and members of the classes were thus deprived of the opportunity to take any steps to prevent damage by NationsBenefits' concealment of the Data Breach and failure to provide timely and adequate notice of the Data Breach to Plaintiffs and Class Members.

## CLASS ACTION ALLEGATIONS

105.    Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and (b)(3) on behalf of the following Nationwide Class:

> All persons in the United States whose personal information was compromised in the Data Breach made public by NationsBenefits in April 2023 (the "Nationwide Class" or the "Class").

106.    Plaintiffs reserve the right to modify, expand or amend the above Nationwide Class definition or to seek certification of a class or classes defined differently than above before any court determines whether certification is appropriate following discovery.

## ARKANSAS SUBCLASS

107.    Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and (b)(3) on behalf of the following Arkansas Subclass:

> All persons in Arkansas whose personal information was compromised in the Data Breach made public by NationsBenefits in April 2023 (the "Arkansas Subclass").

108.    Plaintiffs reserve the right to modify, expand or amend the above Arkansas Subclass definition or to seek certification of a class or classes defined differently than above before any court determines whether certification is appropriate following discovery.

## CONNECTICUT SUBCLASS

109.     Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23(a),

23(b)(2) and (b)(3) on behalf of the following Connecticut Subclass:

> All persons in Connecticut whose personal information was compromised in the Data Breach made public by NationsBenefits in April 2023 (the "Connecticut Subclass").

110.     Plaintiffs reserve the right to modify, expand or amend the above Connecticut

Subclass definition or to seek certification of a class or classes defined differently than above

before any court determines whether certification is appropriate following discovery.

## FLORIDA SUBCLASS

111.     Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23(a),

23(b)(2) and (b)(3) on behalf of the following Florida Subclass:

> All persons in Florida whose personal information was compromised in the Data Breach made public by NationsBenefits in April 2023 (the "Florida Subclass").

112.     Plaintiffs reserve the right to modify, expand or amend the above Florida Subclass

definition or to seek certification of a class or classes defined differently than above before any

court determines whether certification is appropriate following discovery.

## GEORGIA SUBCLASS

113.     Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23(a),

23(b)(2) and (b)(3) on behalf of the following Georgia Subclass:

> All persons in Georgia whose personal information was compromised in the Data Breach made public by NationsBenefits in April 2023 (the "Georgia Subclass").

114.     Plaintiffs reserve the right to modify, expand or amend the above Georgia

Subclass definition or to seek certification of a class or classes defined differently than above

before any court determines whether certification is appropriate following discovery.

## ILLINOIS SUBCLASS

115.     Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23(a),

23(b)(2) and (b)(3) on behalf of the following Illinois Subclass:

> All persons in Illinois whose personal information was compromised in the Data Breach made public by NationsBenefits in April 2023 (the "Illinois Subclass").

116.     Plaintiffs reserve the right to modify, expand or amend the above Illinois Subclass

definition or to seek certification of a class or classes defined differently than above before any

court determines whether certification is appropriate following discovery.

## TEXAS SUBCLASS

117.     Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23(a),

23(b)(2) and (b)(3) on behalf of the following Texas Subclass:

> All persons in Washington whose personal information was compromised in the Data Breach made public by NationsBenefits in April 2023 (the "Texas Subclass").

118.     Plaintiffs reserve the right to modify, expand or amend the above Texas Subclass

definition or to seek certification of a class or classes defined differently than above before any

court determines whether certification is appropriate following discovery.

## WASHINGTON SUBCLASS

119.     Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23(a),

23(b)(2) and (b)(3) on behalf of the following Washington Subclass:

> All persons in Washington whose personal information was compromised in the Data Breach made public by NationsBenefits in April 2023 (the "Washington Subclass" and collectively with the Arkansas Subclass, Connecticut Subclass, Florida Subclass, Georgia Subclass, Illinois Subclass, and Texas Subclass, the "Subclasses").

120.     Plaintiffs reserve the right to modify, expand or amend the above Washington

Subclass definition or to seek certification of a class or classes defined differently than above

before any court determines whether certification is appropriate following discovery.

121.     Certification of Plaintiffs' claims for class-wide treatment are appropriate because all elements of Fed. R. Civ. P. 23(a) and (b)(2)-(3) are satisfied. Plaintiffs can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

122.     **Numerosity**. All requirements of Fed. R. Civ. P. 23(a)(1) are satisfied. The Members of the Nationwide Class and the State Subclasses are so numerous and geographically dispersed that individual joinder of all Class Members is impracticable. While Plaintiffs are informed and believe that there are likely millions of Members of the Classes, the precise number of Class Members is unknown to Plaintiffs. Class Members may be identified through objective means. Class Members may be notified of the pendency of this action by recognized, court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

123.     **Commonality and Predominance**. All requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) are satisfied. This action involves common questions of law and fact, which predominate over any questions affecting individual Class Members, including, without limitation:

  a.   Whether NationsBenefits engaged in active misfeasance and misconduct alleged herein;

  b.   Whether NationsBenefits owed a duty to Class Members to safeguard their sensitive personal information;

  c.   Whether NationsBenefits breached its duty to Class Members to safeguard their sensitive personal information;

d.   Whether NationsBenefits knew or should have known that its data security systems and monitoring processes were deficient;

e.   Whether Plaintiffs and Class Members suffered legally cognizable damages as a result of the Data Breach;

f.   Whether NationsBenefits' failure to provide adequate security proximately caused Plaintiffs' and Class Members' injuries; and

g.   Whether Plaintiffs and Class Members are entitled to declaratory and injunctive relief.

124.   **Typicality.** All requirements of Fed. R. Civ. P. 23(a)(3) are satisfied. Plaintiffs' claims are typical of the claims of all Class and Subclass Members because Plaintiffs, like other Class and Subclass Members, suffered theft of their sensitive personal information in the Data Breach.

125.   **Adequacy of Representation.** All requirements of Fed. R. Civ. P. 23(a)(4) are satisfied. Plaintiffs are adequate Class representatives because they are Members of the Classes and State Subclasses and their interests do not conflict with the interests of other Class and Subclass Members that they seek to represent. Plaintiffs are committed to pursuing this matter for the Class with the Class's collective best interest in mind. Plaintiffs have retained counsel competent and experienced in complex class action litigation of this type and Plaintiffs intends to prosecute this action vigorously. Plaintiffs and their counsel will fairly and adequately protect the Class's interests.

126.   **Predominance and Superiority.** All requirements of Fed. R. Civ. P. 23(b)(3) are satisfied. As described above, common issues of law or fact predominate over individual issues. Resolution of those common issues in Plaintiffs' case will also resolve them for the Class's

claims. In addition, a class action is superior to any other available means for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against NationsBenefits, so it would be impracticable for Members of the Class to individually seek redress for NationsBenefits' wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

127. **Cohesiveness**. All requirements of Fed. R. Civ. P. 23(b)(2) are satisfied. NationsBenefits have acted, or refused to act, on grounds generally applicable to the Nationwide Class and Subclasses such that final declaratory or injunctive relief is appropriate.

128. Plaintiffs reserve the right to revise the foregoing class allegations and definitions based on newly learned facts or legal developments that arise following additional investigation, discovery, or otherwise.

## CLAIMS FOR RELIEF

### COUNT 1
### NEGLIGENCE
**(On behalf of the Nationwide Class, or alternatively, the Subclasses)**

129. Plaintiffs re-allege and incorporate by reference all preceding allegations as if fully set forth herein.

130.     NationBenefits, as a service provider for Plaintiffs and Class Members, obtained

Plaintiffs' and Class Members' Private Information from Plaintiffs and/or from Plaintiffs' health

insurer or managed care organization.

131.     By collecting and maintaining sensitive Private Information, NationsBenefits had

a common law duty of care to use reasonable means to secure and safeguard the sensitive

personal information and to prevent disclosure of the information to unauthorized individuals.

NationsBenefits' duty included a responsibility to implement processes by which it could detect

a data breach of this type and magnitude in a timely manner.

132.     NationsBenefits owed a duty of care to Plaintiffs and Class Members to provide

data security consistent with the various statutory requirements, regulations, and other notices

described above.

133.     NationsBenefits' duty of care arose as a result of, among other things, the special

relationship that existed between NationsBenefits and Plaintiffs and Class Members.

NationsBenefits was the only party in a position to ensure that its systems were sufficient to

protect against the foreseeable risk that a data breach could occur that would result in substantial

harm to consumers.

134.     NationsBenefits was subject to an "independent duty" untethered to any contract

between Plaintiffs and Class Members and NationsBenefits.

135.     NationsBenefits breached its duties, and thus was negligent, by failing to use

reasonable measures to protect customers' sensitive personal information. NationsBenefits'

negligent acts and omissions include, but are not limited to, the following:

> a.   failure to employ systems and educate employees to protect against
>
> malware;

b. failure to comply with industry standards for software and server security;

c. failure to track and monitor access to its network and personal information;

d. failure to limit access to those with a valid purpose;

e. failure to adequately staff and fund its data security operation;

f. failure to remove, delete, or destroy highly sensitive personal information of consumers that is no longer being used for any valid business purpose;

g. failure to use due care in hiring, promoting, and supervising those responsible for its data security operations; and

h. failure to recognize that hackers were stealing personal information from its network while the Data Breach was taking place.

i. failure to oversee the entrustment of student loan borrowers' Private Information

136. It was foreseeable to NationsBenefits that a failure to use reasonable measures to protect its customers' sensitive personal information could result in injury to consumers. Further, actual and attempted breaches of data security were reasonably foreseeable to NationsBenefits given the known frequency of data breaches and various warnings from industry experts.

137. As a direct and proximate result of NationsBenefits' negligence, Plaintiffs and Class Members sustained damages as alleged herein. Plaintiffs and Class Members are entitled to compensatory and consequential damages suffered because of the Data Breach.

138. Plaintiffs and Class Members are also entitled to injunctive relief requiring NationsBenefits to, among other things: (i) strengthen its data security systems and monitoring

procedures; (ii) submit to future annual audits of those systems; and (iii) provide free credit monitoring and identity theft insurance to all Class Members.

## COUNT 2
## NEGLIGENCE *PER SE*
**(On behalf of the Nationwide Class, or alternatively, the Subclasses)**

139.    Plaintiffs re-allege and incorporate by reference all preceding allegations as if fully set forth herein.

140.    NationBenefits, as a service provider for Plaintiffs and Class Members, obtained Plaintiffs' and Class Members' Private Information from Plaintiffs and/or from Plaintiffs' health insurer or managed care organization.

141.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by companies such as NationsBenefits for failing to use reasonable measures to protect Private Information.  Various FTC publications and orders also form the basis of NationsBenefits' duty.

142.    NationsBenefits violated Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and not complying with the industry standards. NationsBenefits' conduct was particularly unreasonable given the nature and amount of Private Information it obtained and disclosed and the foreseeable consequences of a data breach.

143.    Plaintiffs and Class Members are consumers within the class of persons Section 5 of the FTC Act was intended to protect.

144.    Moreover, the harm that has occurred is the type of harm that the FTC Act was intended to guard against.  Indeed, the FTC has pursued over fifty enforcement actions against businesses which, as a result of their failure to employ reasonable data security measures and

avoid unfair and deceptive practices, caused the same harm suffered by Plaintiffs and Class Members.

146. As a direct and proximate result of NationsBenefits' negligence, Plaintiffs and Class Members have been injured as described herein and above, and are entitled to damages, including compensatory, punitive, and nominal damages, in an amount to be proven at trial.

146. NationsBenefits' violation of Section 5 of the FTC Act constitutes negligence *per se*.

147. Plaintiffs and Class Members are also entitled to injunctive relief requiring NationsBenefits to, among other things: (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems; and (iii) provide free credit monitoring and identity theft insurance to all Class Members.

**COUNT 3**
**BREACH OF IMPLIED CONTRACT**
**(On behalf of the Nationwide Class, or alternatively, the Subclasses)**

148. Plaintiffs re-allege and incorporate by reference all preceding allegations as if fully set forth herein.

149. When Plaintiffs and Class Members provided their sensitive personal information to NationsBenefits in exchange for NationsBenefits' services, they entered into implied contracts with NationsBenefits under which NationsBenefits agreed to take reasonable steps to protect their sensitive personal information.

150. NationsBenefits solicited and invited Plaintiffs and Class Members to provide their sensitive personal information as part of their regular business practices. Indeed, to sign up for a NationsBenefits account—which is required to obtain certain benefits owed to Plaintiffs and Class Members as members, customers, and/or policyholders of their respective insurers or

managed care organizations—NationsBenefits requires customers to provide sensitive Private Information. Plaintiffs and Class Members accepted NationsBenefits' offers and provided their sensitive personal information to NationsBenefits.

151.    Plaintiffs and Class Members reasonably believed and expected that NationsBenefits' data security practices complied with relevant laws, regulations, and industry standards when they entered into the implied contracts with NationsBenefits.

152.    Plaintiffs and Class Members paid money (directly and/or indirectly) to NationsBenefits and Plaintiffs and Class Members therefore reasonably believed and expected that NationsBenefits would use part of those funds to obtain and oversee adequate data security. NationsBenefits failed to do so.

153.    Plaintiffs and Class Members would not have provided their sensitive personal information to NationsBenefits in the absence of NationsBenefits' implied promise to keep their sensitive personal information reasonably secure.

154.    Plaintiffs and Class Members fully performed their obligations under the implied contracts by paying money to NationsBenefits.

155.    NationsBenefits breached its implied contracts with Plaintiffs and Class Members by failing to implement reasonable data security measures.

156.    As a direct and proximate result of NationsBenefits' breaches of the implied contracts, Plaintiffs and Class Members sustained damages as alleged herein. Plaintiffs and Class Members are entitled to compensatory and consequential damages suffered because of the Data Breach.

157.    Plaintiffs and Class Members are also entitled to injunctive relief requiring NationsBenefits to, among other things: (i) strengthen its data security systems and monitoring

procedures; (ii) submit to future annual audits of those systems; and (iii) provide free credit monitoring and identity theft insurance to all Class Members.

**COUNT 4**
**UNJUST ENRICHMENT**
**(On behalf of the Nationwide Class, or alternatively, the Subclasses)**

158.     Plaintiffs re-allege and incorporate by reference all preceding allegations as if fully set forth herein.

159.     Plaintiffs and Class Members conferred a monetary benefit upon NationsBenefits in the form of monies paid while utilizing NationsBenefits' online services.

160.     NationsBenefits appreciated or had knowledge of the benefits conferred upon it by Plaintiffs and Class Members. NationsBenefits also benefited from the receipt of Plaintiffs' and Class Members' sensitive personal information as this was utilized by NationsBenefits to send bills and process payments for services, among other things.

161.     The monies Plaintiffs and Class Members paid to NationsBenefits was supposed to be used by NationsBenefits, in part, to pay for and oversee adequate data privacy infrastructure, practices, and procedures.

162.     NationsBenefits' conduct caused Plaintiffs and Class Members to suffer actual damages in an amount equal to the difference in value between what they paid for (NationsBenefits' services made with adequate data privacy and security practices and procedures), and what they actually received (NationsBenefits' services without adequate data privacy and security practices and procedures).

163.     In equity and good conscience, NationsBenefits should not be permitted to retain the money belonging to Plaintiffs and Class Members because NationsBenefits failed to oversee, implement, or adequately implement, the data privacy and security practices and procedures that

Plaintiffs and Class Members paid for and that were otherwise mandated by federal, state, and local laws and industry standards.

164.    NationsBenefits should be compelled to disgorge into a common fund for the benefit of Plaintiffs and Class Members all unlawful or inequitable proceeds received by it as a result of the conduct and Data Breach alleged herein.

**COUNT 5**
**BREACH OF CONFIDENCE**
**(On behalf of the Nationwide Class, or alternatively, the Subclasses)**

165.    Plaintiffs re-allege and incorporate by reference all preceding allegations as if fully set forth herein.

166.    Plaintiffs and Class Members maintained a confidential relationship with NationsBenefits whereby NationsBenefits undertook a duty not to disclose to unauthorized parties the Private Information provided by Plaintiffs and Class Members to NationsBenefits to unauthorized third parties. Such Private Information was confidential and novel, highly personal and sensitive, and not generally known.

167.    NationsBenefits knew Plaintiffs' and Class Members' Private Information was being disclosed in confidence and understood the confidence was to be maintained, including by expressly and implicitly agreeing to protect the confidentiality and security of the Private Information they collected, stored, and maintained.

168.    As a result of the Data Breach, there was an unauthorized disclosure of Plaintiffs' and Class Members' Private Information in violation of this understanding. The unauthorized disclosure occurred because NationsBenefits failed to implement and maintain reasonable safeguards to protect the Private Information in its possession and failed to comply with industry-standard data security practices.

169.    Plaintiffs and Class Members were harmed by way of an unconsented disclosure of their confidential information to an unauthorized third party.

170.    But for NationsBenefits' disclosure of Plaintiffs' and Class Members' Private Information in violation of the parties' understanding of confidence, their Private Information would not have been compromised, stolen, viewed, accessed, and used by unauthorized third parties. NationsBenefits' Data Breach was the direct and legal cause of the theft of Plaintiffs' and Class Members' Private Information, as well as the resulting damages. The injury and harm Plaintiffs and Class Members suffered was the reasonably foreseeable result of NationsBenefits' unauthorized disclosure of Plaintiffs' and Class Members' Private Information. NationsBenefits knew its computer systems and technologies for accepting, securing, and storing Plaintiffs' and Class Members' Private Information had serious security vulnerabilities because NationsBenefits failed to observe even basic information security practices or correct known security vulnerabilities.

171.    As a direct and proximate result of NationsBenefits' breach of confidence, Plaintiffs and Class Members have been injured and are entitled to damages in an amount to be proven at trial. Such injuries include one or more of the following: ongoing, imminent, certainly impending threat of identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; loss of the value of their privacy and the confidentiality of the stolen Private Information; illegal sale of the compromised Private Information on the black market; mitigation expenses and time spent on credit monitoring, identity theft insurance, and credit freezes and unfreezes; time spent in response to the Data Breach reviewing bank statements, credit card statements, and credit reports, among other related activities; expenses and time spent initiating

fraud alerts; decreased credit scores and ratings; lost work time; lost value of the Private Information; lost value of access to their Private Information permitted by NationsBenefits; the amount of the actuarial present value of ongoing high-quality identity defense and credit monitoring services made necessary as mitigation measures because of NationsBenefits' Data Breach; lost benefit of their bargains and overcharges for services or products; nominal and general damages; and other economic and non-economic harm.

### COUNT 6
### INVASION OF PRIVACY – INTRUSION UPON SECLUSION
**(On behalf of the Nationwide Class, or alternatively, the Subclasses)**

172.    Plaintiffs re-allege and incorporate by reference all preceding allegations as if fully set forth herein.

173.    Plaintiffs shared Private Information with NationsBenefits that Plaintiffs wanted to remain private and non-public.

174.    Plaintiffs reasonably expected that the Private Information they shared with NationsBenefits would be protected and secured against access by unauthorized parties and would not be disclosed to or obtained by unauthorized parties or disclosed or obtained for any improper purpose.

175.    NationsBenefits intentionally intruded into Plaintiffs' and Class Members' seclusion by disclosing without permission their Private Information to a third party who then sold their Private Information to other third-parties on the dark web.

176.    By failing to keep Plaintiffs' and Class Members' Private Information secure, and disclosing Private Information to unauthorized parties for unauthorized use, NationsBenefits unlawfully invaded Plaintiffs' and Class Members' privacy right to seclusion by, inter alia:

a.  intruding into their private affairs in a manner that would be highly offensive to a reasonable person;

b.  invading their privacy by improperly using their Private Information properly obtained for specific purpose for another purpose, or disclosing it to unauthorized persons;

c.  failing to adequately secure their Private Information from disclosure to unauthorized persons; and

d.  enabling the disclosure of their Private Information without consent.

177.  The Private Information that was publicized during the Data Breach was highly sensitive, private, and confidential, as it included Social Security numbers and other Private Information.

178.  NationsBenefits' intrusions into Plaintiffs' and Class Members' seclusion were substantial and would be highly offensive to a reasonable person, constituting an egregious breach of social norms.

179.  As a direct and proximate result of NationsBenefits' invasions of privacy, Plaintiffs and Class Members have been injured and are entitled to damages in an amount to be proven at trial. Such injuries include one or more of the following: ongoing, imminent, certainly impending threat of identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and other misuse, resulting in monetary loss and economic harm; loss of the value of their privacy and the confidentiality of the stolen Private Information; illegal sale of the compromised Private Information on the black market; mitigation expenses and time spent on credit monitoring, identity theft insurance, and credit freezes and unfreezes; time spent in response to the Data Breach reviewing bank statements, credit card

statements, and credit reports, among other related activities; expenses and time spent initiating fraud alerts; decreased credit scores and ratings; lost work time; lost value of the Private Information; lost value of access to their Private Information permitted by NationsBenefits; the amount of the actuarial present value of ongoing high-quality identity defense and credit monitoring services made necessary as mitigation measures because of NationsBenefits' Data Breach; lost benefit of their bargains and overcharges for services or products; nominal and general damages; and other economic and non-economic harm.

**COUNT 7**
**ARKANSAS DECEPTIVE TRADE PRACTICES ACT,**
**A.C.A. §§ 4-88-101,** *et seq.*
**(On behalf of Plaintiff Lazaroff and the Arkansas Subclass)**

180.    Plaintiff Lazaroff individually, and on behalf of the Connecticut Subclass, repeats and realleges all allegations as if fully set forth herein.

181.    NationsBenefits' products and services are "goods" and "services" as defined by A.C.A. §§ 4-88-102(4) and (7).

182.    NationsBenefits advertised, offered, or sold goods or services in Arkansas and engaged in trade or commerce directly or indirectly affecting the people of Arkansas.

183.    The Arkansas Deceptive Trade Practices Act ("ADTPA"), A.C.A. §§ 4-88-101, et seq., prohibits unfair, deceptive, false, and unconscionable trade practices.

184.    NationsBenefits engaged in acts of deception and false pretense in connection with the sale and advertisement of services in violation of A.C.A. § 4-88-1-8(1) and concealment, suppression and omission of material facts, with intent that others rely upon the concealment, suppression or omission in violation of A.C.A. § 4-88-1-8(2), and engaged in the following deceptive and unconscionable trade practices defined in A.C.A. § 4-88-107:

a. Knowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services or as to whether goods are original or new or of a particular standard, quality, grade, style, or model;

b. Advertising the services with the intent not to sell them as advertised;

c. Employing bait-and-switch advertising consisting of an attractive but insincere offer to sell a product or service which the seller in truth does not intend or desire to sell;

d. Knowingly taking advantage of a consumer who is reasonably unable to protect his or her interest;

e. Engaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade.

185. NationsBenefits' unconscionable, false, and deceptive acts and practices include:

a. Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff Lazaroff's and the Arkansas Subclass' Private Information, which was a direct and proximate cause of the Data Breach;

b. Failing to identify and remediate foreseeable security and privacy risks and adequately improve security and privacy measures despite knowing the risk of cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Lazaroff's and the Arkansas Subclass' Private

Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the Data Breach;

    d. Misrepresenting that they would protect the privacy and confidentiality of Plaintiff Lazaroff's and the Arkansas Subclass' Private Information, including by implementing and maintaining reasonable security measures;

    e. Misrepresenting that they would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Lazaroff's and the Arkansas Subclass' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

    f. Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff Lazaroff's and the Arkansas Subclass' Private Information; and

186. Omitting, suppressing, and concealing the material fact that they did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Lazaroff's and the Arkansas Subclass' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45.

187. NationsBenefits' representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of NationsBenefits' data security and ability to protect the confidentiality of consumers' PII.

188. NationsBenefits intended to mislead Plaintiff Lazaroff and the Arkansas Subclass and induce them to rely on its misrepresentations and omissions.

189. Had NationsBenefits disclosed to Plaintiff Lazaroff and the Arkansas Subclass that its data systems were not secure and, thus, vulnerable to attack, NationsBenefits would have

been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. NationsBenefits was trusted with sensitive and valuable Private Information regarding millions of consumers, including Plaintiff Lazaroff and the Arkansas Subclass. NationsBenefits accepted the responsibility of protecting the data while keeping the inadequate state of its security controls secret from the public. Accordingly, Plaintiff Lazaroff and the Arkansas Subclass acted reasonably in relying on NationsBenefits' misrepresentations and omissions, the truth of which they could not have discovered.

190.    NationsBenefits acted intentionally, knowingly, and maliciously to violate Arkansas's Deceptive Trade Practices Act, and recklessly disregarded Plaintiff and The Arkansas Subclass' rights. NationsBenefits' numerous past data breaches put it on notice that its security and privacy protections were inadequate.

191.    308. As a direct and proximate result of NationsBenefits' unconscionable, unfair, and deceptive acts or practices and Plaintiff and The Arkansas Subclass' reliance thereon, Plaintiff Lazaroff and the Arkansas Subclass have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, as described herein, including but not limited to fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; loss of value of their PII; overpayment for NationsBenefits' services; loss of the value of access to their PII; and the value of identity protection services made necessary by the Breach.

192.    Plaintiff Lazaroff and the Arkansas Subclass seek all monetary and non-monetary relief allowed by law, including actual financial losses; injunctive relief; and reasonable attorneys' fees and costs.

**COUNT 8**
**CONNECTICUT UNFAIR TRADE PRACTICES ACT**
**Conn. Gen. Stat. Ann. §§ 42-110a *et seq.***
**(On behalf of Plaintiff Jackson and the Connecticut Subclass)**

193.    Plaintiff Jackson individually, and on behalf of the Connecticut Subclass, repeats and realleges all allegations as if fully set forth herein.

194.    NationsBenefits is a "person" as defined by Conn. Gen. Stat. Ann. § 42-110(a)(3).

195.    Plaintiff Jackson and Connecticut Subclass Members are actual or potential consumers of NationsBenefits' services.

196.    At all times mentioned herein, NationsBenefits engages in "trade" or "commerce" in Connecticut as defined by Conn. Gen. Stat. Ann. § 42-110(a)(4), in that they engaged in the "advertising," "sale," and "distribution" of any "goods," "services," "property," "articles," "commodities," or "things of value" in Connecticut.

197.    The Connecticut Unfair Trade Practices Act (CUTPA) provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." C.G.S.A. § 42-110b(a).

198.    For the reasons discussed herein, NationsBenefits violated CUTPA by engaging in the herein described deceptive or unfair acts or practices proscribed by § 42-110a *et seq.* NationsBenefits' acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead Members of the public, including consumers acting reasonably under the circumstances, to their detriment.

199.    NationsBenefits engaged in deceptive trade practices in the course of its business, in violation of CUTPA, including:

        a.    Making a false representation as to the characteristics of products and services;

b. Representing that services are of a particular standard, quality, or grade, though NationsBenefits knew or should have known that there were or another;

c. Advertising services with intent not to sell them as advertised;

d. Employing "bait and switch" advertising, which is advertising accompanied by an effort to sell goods, services, or property other than those advertised or on terms other than those advertised; and

e. Failing to disclose material information concerning its services which was known at the time of an advertisement or sale when the failure to disclose the information was intended to induce the consumer to enter into the transaction.

200. NationsBenefits' deceptive trade practices include:

a. Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff Jackson's and Connecticut Subclass Members' Private Information, which was a direct and proximate cause of the Data Breach;

b. Failing to identify and remediate foreseeable security and privacy risks and adequately improve security and privacy measures despite knowing the risk of cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Jackson's and Connecticut Subclass Members' Private Information, including duties imposed by the FTC Act,

15 U.S.C. § 45, which was a direct and proximate cause of the Data
Breach;

d.  Misrepresenting that they would protect the privacy and confidentiality of
Plaintiff Jackson's and Subclass Members' Private Information, including
by implementing and maintaining reasonable security measures;

e.  Misrepresenting that they would comply with common law and statutory
duties pertaining to the security and privacy of Plaintiff Jackson's and
Subclass Members' Private Information, including duties imposed by the
FTC Act, 15 U.S.C. § 45;

f.  Omitting, suppressing, and concealing the material fact that it did not
reasonably or adequately secure Plaintiff Jackson's and Subclass
Members' Private Information; and

g.  Omitting, suppressing, and concealing the material fact that they did not
comply with common law and statutory duties pertaining to the security
and privacy of Plaintiff Jackson's and Subclass Members' Private
Information, including duties imposed by the FTC Act, 15 U.S.C. § 45.

201.  NationsBenefits' representations and omissions were material because they were
likely to deceive reasonable consumers about the adequacy of NationsBenefits' data security and
ability to protect the confidentiality of consumers' Private Information.

202.  NationsBenefits intended to mislead Plaintiff Jackson and Connecticut Subclass
Members and induce them to rely on its misrepresentations and omissions.

203.  Had NationsBenefits disclosed to Plaintiff Jackson and the Connecticut Subclass
that its data systems were not secure and, thus, vulnerable to attack, NationsBenefits would have

been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. NationsBenefits was trusted with sensitive and valuable Private Information regarding millions of consumers, including Plaintiff Jackson and the Connecticut Subclass. NationsBenefits accepted the responsibility of protecting the data while keeping the inadequate state of its security controls secret from the public. Accordingly, Plaintiff Jackson and the Connecticut Subclass Members acted reasonably in relying on NationsBenefits' misrepresentations and omissions, the truth of which they could not have discovered.

204.     NationsBenefits acted intentionally, knowingly, and maliciously to violate CUTPA, and recklessly disregarded Plaintiff Jackson and Connecticut Subclass Members' rights. NationsBenefits' numerous past data breaches put it on notice that its security and privacy protections were inadequate.

205.     As a direct and proximate result of NationsBenefits' deceptive trade practices, Plaintiff Jackson and the Connecticut Subclass suffered injuries to their legally protected interests, including their legally protected interest in the confidentiality and privacy of their Private Information, monetary and non-monetary damages, as described herein, including but not limited to fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; loss of value of their Private Information; overpayment for NationsBenefits' services; loss of the value of access to their Private Information; and the value of identity protection services made necessary by the Data Breach.

206.     NationsBenefits' deceptive trade practices significantly impact the public, because many Members of the public are actual or potential consumers of NationsBenefits'

services and the Data Breach affected millions of Americans, which include Members of the

Colorado Subclass.

207.    Plaintiff Jackson and the Connecticut Subclass seek relief for the injuries they

have suffered as a result of NationsBenefits' unfair and deceptive acts and practices, as provided

by C.G.S.A. § 42-110g and applicable law.

**COUNT 9**
**FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**
**Fla. Stat. §§ 501.201, *et seq.***
**(On behalf of Plaintiff Veazey and the Florida Subclass)**

208.    Plaintiff Veazey, individually and on behalf of the Florida Subclass, repeats and

realleges the allegations above as if fully set forth herein.

209.    Plaintiff Veazey and Florida Subclass Members are "consumers" as defined by

Fla. Stat. § 501.203.

210.    NationsBenefits advertised, offered, or sold goods or services in Florida and

engaged in trade or commerce directly or indirectly affecting the people of Florida.

211.    NationsBenefits engaged in unconscionable, unfair, and deceptive acts and

practices in the conduct of trade and commerce, in violation of Fla. Stat. § 501.204(1), including:

    a.    Failing to implement and maintain reasonable security and privacy

        measures to protect Plaintiff Veazey's and Florida Subclass Members'

        Private Information, which was a direct and proximate cause of the Data

        Breach;

    b.    Failing to identify and remediate foreseeable security and privacy risks

        and adequately improve security and privacy measures despite knowing

        the risk of cybersecurity incidents, which was a direct and proximate cause

        of the Data Breach;

c.  Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Veazey's and Florida Subclass Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, and Florida's data security statute, F.S.A. § 501.171(2), which was a direct and proximate cause of the Data Breach;

d.  Misrepresenting that they would protect the privacy and confidentiality of Plaintiff Veazey's and Florida Subclass Members' Private Information, including by implementing and maintaining reasonable security measures;

e.  Misrepresenting that they would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Veazey's and Florida Subclass Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, and Florida's data security statute, F.S.A. § 501.171(2);

f.  Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff Veazey's and Florida Subclass Members' Private Information; and

g.  Omitting, suppressing, and concealing the material fact that they did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Veazey's and Florida Subclass Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, and Florida's data security statute, F.S.A. § 501.171(2).

212.     NationsBenefits' representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of NationsBenefits' data security and ability to protect the confidentiality of consumers' Private Information.

213.     Had NationsBenefits disclosed to Plaintiffs and Subclass Members that its data systems were not secure and, thus, vulnerable to attack, NationsBenefits would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. NationsBenefits was trusted with sensitive and valuable Private Information regarding millions of consumers, including Plaintiffs and the Subclass. NationsBenefits accepted the responsibility of protecting the data while keeping the inadequate state of its security controls secret from the public. Accordingly, Plaintiffs and the Subclass Members acted reasonably in relying on NationsBenefits' misrepresentations and omissions, the truth of which they could not have discovered.

214.     As a direct and proximate result of NationsBenefits' unconscionable, unfair, and deceptive acts and practices, Plaintiff Veazey and Florida Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, as described herein, including but not limited to fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; loss of value of their Private Information; overpayment for NationsBenefits' services; loss of the value of access to their Private Information; and the value of identity protection services made necessary by the Breach.

215.     Plaintiff Veazey and Florida Subclass Members seek all monetary and non-monetary relief allowed by law, including actual damages under Fla. Stat. § 501.211; declaratory

and injunctive relief; reasonable attorneys' fees and costs, under Fla. Stat. § 501.2105(1); and any other relief that is just and proper.

**COUNT 10**
**GEORGIA FAIR BUSINESS PRACTICES ACT,**
**O.C.G.A. §§ 10-1-399, *et seq.***
**(On Behalf of Plaintiff Gilpatrick and Georgia Subclass)**

216.     Plaintiff Gilpatrick, individually and on behalf of the Georgia Subclass, repeats and realleges all preceding allegations as if fully set forth herein.

217.     NationsBenefits, Plaintiffs, and Class members are "persons" within the meaning of the Georgia Fair Business Practices Act ("GFBPA"). O.C.G.A. § 10-1- 399(a).

218.     NationsBenefits is engaged in, and its acts and omissions affect, trade and commerce under O.C.G.A. § 10-1-392(28). Further, NationsBenefits is engaged in "consumer acts or practices," which are defined as "acts or practices intended to encourage consumer transactions" under O.C.G.A. § 10-1-392(7).

219.     NationsBenefits engaged in "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" in violation of

220.     O.C.G.A. § 10-1-393(a). Those acts and practices include those expressly declared unlawful by O.C.G.A. § 10-1-393(b), such as:

   a.   Representing that goods or services have approval, characteristics, uses, or benefits that they do not have;

   b.   Representing that goods or services are of a particular standard, quality, or grade if they are of another; and

   c.   Advertising goods or services with intent not to sell them as advertised.

221. In addition, NationsBenefits engaged in the unfair and deceptive acts and practices described below that, while not expressly declared unlawful by O.C.G.A. § 10-1-393(b), are prohibited by O.C.G.A. § 10-1-393(a).

222. In the course of its business, NationsBenefits engaged in unfair acts and practices prohibited by O.C.G.A. § 10-1-393(a), including:

    a. Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff Gilpatrick's and the Georgia Subclass' Private Information, which was a direct and proximate cause of the Data Breach;

    b. Failing to identify and remediate foreseeable security and privacy risks and adequately improve security and privacy measures despite knowing the risk of cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

    c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Gilpatrick's and the Georgia Subclass' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the Data Breach;

223. In the course of its business, NationsBenefits also engaged in deceptive acts and practices prohibited by O.C.G.A. § 10-1-393(a), including:

    a. Misrepresenting that they would protect the privacy and confidentiality of Plaintiff Gilpatrick's and the Georgia Subclass' Private Information, including by implementing and maintaining reasonable security measures;

b. Misrepresenting that they would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Gilpatrick's and the Georgia Subclass' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

c. Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff Gilpatrick's and the Georgia Subclass' Private Information; and

d. Omitting, suppressing, and concealing the material fact that they did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Gilpatrick's and the Georgia Subclass' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45.

224. The misrepresentations and omissions described in the preceding paragraph were material and made intentionally and knowingly with the intent that Plaintiff Gilpatrick and the Georgia Subclass rely upon them in connection with providing to NationsBenefits their extremely sensitive and valuable Private Information.

225. NationsBenefits knew of the inadequate security controls and vulnerabilities in its data security systems storing Plaintiff Gilpatrick's and the Georgia Subclass' sensitive and valuable Private Information, but concealed all of these security failings.

226. NationsBenefits' deceptive acts and practices were likely to and did in fact deceive the public at large and reasonable consumers, including Plaintiff Gilpatrick and the Georgia Subclass, regarding the security and safety of the Private Information in its care, including the Private Information of Plaintiff Gilpatrick and the Georgia Subclass.

227.     NationsBenefits knew or should have known that by collecting, selling, and trafficking in Private Information, Plaintiff Gilpatrick and the Georgia Subclass would reasonably rely upon and assume NationsBenefits' data systems were secure unless NationsBenefits otherwise informed them.

228.     Plaintiff Gilpatrick and the Georgia Subclass had no effective means on their own to discover the truth. NationsBenefits did not afford Plaintiff Gilpatrick and the Georgia Subclass any opportunity to inspect NationsBenefits' data security, learn that it was inadequate and non-compliant with legal requirements, or otherwise ascertain the truthfulness of NationsBenefits' representations and omissions regarding NationsBenefits' ability to protect data and comply with the law.

229.     Plaintiff Gilpatrick and the Georgia Subclass relied to their detriment upon NationsBenefits' representations and omissions regarding data security, including NationsBenefits' failure to alert customers that its privacy and security protections were inadequate and insecure and thus were vulnerable to attack.

230.     Had NationsBenefits disclosed to Plaintiff Gilpatrick and the Georgia Subclass that its data systems were not secure and, thus, vulnerable to attack, NationsBenefits would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. NationsBenefits was trusted with sensitive and valuable Private Information regarding millions of consumers, including Plaintiff Gilpatrick and the Georgia Subclass. NationsBenefits accepted the responsibility of protecting the data while keeping the inadequate state of its security controls secret from the public. Accordingly, Plaintiff Gilpatrick and the Georgia Subclass acted reasonably in relying on NationsBenefits' misrepresentations and omissions, the truth of which they could not have discovered.

231. NationsBenefits acted intentionally, knowingly, and maliciously to violate the GFBPA, and recklessly disregarded Plaintiff Gilpatrick's and the Georgia Subclass' rights.

232. NationsBenefits' violations present a continuing risk to Plaintiff Gilpatrick and the Georgia Subclass, as well as to the general public.

233. NationsBenefits' unlawful acts and practices complained of herein affect the consumer marketplace and the public interest, including the millions of U.S residents and many Georgians affected by the NationsBenefits Data Breach.

234. But for NationsBenefits' violations of the GFBPA described above, the NationsBenefits Data Breach would not have occurred.

235. As a direct and proximate result of NationsBenefits' violations of the GFBPA, Plaintiff Gilpatrick and the Georgia Subclass have suffered injury-in-fact, monetary, and non-monetary damages, as described herein, including but not limited to fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; loss of value of their Private Information; overpayment for NationsBenefits' services; loss of the value of access to their Private Information; and the value of identity protection services made necessary by the Breach.

236. The GFBPA permits any person who suffers injury or damages as a result of the violation of its provisions to bring an action against the person or persons engaged in such violations. O.C.G.A. § 10-1-399(a).

237. Plaintiff Gilpatrick and the Georgia Subclass bring this action on behalf of themselves and the Georgia Subclass for the relief requested above and for the public benefit in order to promote the public interests in the provision of truthful, fair information to allow consumers and the public at large to make informed decisions related to the security of their

sensitive Private Information, and to protect the public from NationsBenefits' unfair methods of competition and unfair, deceptive, fraudulent, unconscionable and unlawful practices.

238.    Plaintiff Gilpatrick and the Georgia Subclass are entitled to a judgment against NationsBenefits for actual and consequential damages; general, nominal, exemplary, and trebled damages and attorneys' fees pursuant to the GFBPA; costs; and such other further relief as the Court deems just and proper.

**COUNT 11**
**GEORGIA UNIFORM DECEPTIVE PRACTICES ACT,**
**O.C.G.A. §§ 10-1-370, *et seq.***
**(On Behalf of Plaintiff Gilpatrick and Georgia Subclass)**

239.    Plaintiff Gilpatrick, individually and on behalf of the Georgia Subclass, repeats and realleges all preceding allegations as if fully set forth herein.

240.    NationsBenefits, Plaintiff Gilpatrick, and the Georgia Subclass are "persons" within the meaning of § 10-1-371(5) of the Georgia Uniform Deceptive Trade Practices Act ("Georgia UDTPA").

241.    NationsBenefits engaged in deceptive trade practices in the conduct of its business, in violation of O.C.G.A. § 10-1-372(a), including:

        a.  Representing that goods or services have characteristics that they do not have;

        b.  Representing that goods or services are of a particular standard, quality, or grade if they are of another;

        c.  Advertising goods or services with intent not to sell them as advertised; and

        d.  Engaging in other conduct that creates a likelihood of confusion or misunderstanding.

242.  NationsBenefits' deceptive acts and practices include:

  a.  Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff Gilpatrick's and the Georgia Subclass' Private Information, which was a direct and proximate cause of the Data Breach;

  b.  Failing to identify and remediate foreseeable security and privacy risks and adequately improve security and privacy measures despite knowing the risk of cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

  c.  Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Gilpatrick's and the Georgia Subclass' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the Data Breach;

  d.  Misrepresenting that they would protect the privacy and confidentiality of Plaintiff Gilpatrick's and the Georgia Subclass' Private Information, including by implementing and maintaining reasonable security measures;

  e.  Misrepresenting that they would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Gilpatrick's and the Georgia Subclass' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

  f.  Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff Gilpatrick's and the Georgia Subclass' Private Information; and

g.  Omitting, suppressing, and concealing the material fact that they did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Gilpatrick's and the Georgia Subclass' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45.

243.  NationsBenefits' representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of NationsBenefits' data security and ability to protect the confidentiality of consumers' Private Information.

244.  NationsBenefits intended to mislead Plaintiff and the Georgia Subclass and induce them to rely on its misrepresentations and omissions.

245.  In the course of its business, NationsBenefits engaged in activities with a tendency or capacity to deceive.

246.  NationsBenefits acted intentionally, knowingly, and maliciously to violate Georgia's Uniform Deceptive Trade Practices Act, and recklessly disregarded Plaintiff Gilpatrick's and the Georgia Subclass' rights. NationsBenefits' numerous past data breaches put it on notice that its security and privacy protections were inadequate.

247.  Had NationsBenefits disclosed to Plaintiff Gilpatrick and the Georgia Subclass that its data systems were not secure and, thus, vulnerable to attack, NationsBenefits would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. NationsBenefits was trusted with sensitive and valuable Private Information regarding millions of consumers, including Plaintiff and the Subclass. NationsBenefits accepted the responsibility of protecting the data while keeping the inadequate state of its security controls secret from the public. Accordingly, Plaintiff Gilpatrick

and the Georgia Subclass acted reasonably in relying on NationsBenefits' misrepresentations and omissions, the truth of which they could not have discovered.

248. As a direct and proximate result of NationsBenefits' deceptive trade practices, Plaintiff Gilpatrick and the Georgia Subclass have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, as described herein, including but not limited to fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; loss of value of their Private Information; overpayment for NationsBenefits' services; loss of the value of access to their Private Information; and the value of identity protection services made necessary by the Breach.

249. Plaintiff Gilpatrick and the Georgia Subclass seek all relief allowed by law, including injunctive relief, and reasonable attorneys' fees and costs, under O.C.G.A. § 10-1-373.

## COUNT 12
### ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
815l. Comp. Stat. §§ 510/2, *et seq.*
**(On behalf of Plaintiff Bussell, Plaintiff McCoy, and the Illinois Subclass)**

250. Plaintiff Bussell, individually and on behalf of the Illinois Subclass, repeats and realleges all preceding allegations as if fully set forth herein.

251. NationsBenefits is a "person" as defined by 815 Ill. Comp. Stat. §§ 510/1(5).

252. NationsBenefits engaged in deceptive trade practices in the conduct of its business, in violation of 815 Ill. Comp. Stat. §§ 510/2(a), including:

    a. Representing that goods or services have characteristics that they do not have;

b. Representing that goods or services are of a particular standard, quality, or grade if they are of another;

c. Advertising goods or services with intent not to sell them as advertised; and

d. Engaging in other conduct that creates a likelihood of confusion or misunderstanding.

253. NationsBenefits' deceptive acts and practices include:

a. Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff Bussell's and Illinois Subclass Members' Private Information, which was a direct and proximate cause of the Data Breach;

b. Failing to identify and remediate foreseeable security and privacy risks and adequately improve security and privacy measures despite knowing the risk of cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Bussell's and Illinois Subclass Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, Illinois laws regulating the use and disclosure of Social Security Numbers, 815 Ill. Comp. Stat § 505/2RR, and the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. § 510/2(a), which was a direct and proximate cause of the Data Breach;

d.  Misrepresenting that they would protect the privacy and confidentiality of Plaintiff Bussell's and Illinois Subclass Members' Private Information, including by implementing and maintaining reasonable security measures;

e.  Misrepresenting that they would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Bussell's and Illinois Subclass Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, Illinois laws regulating the use and disclosure of Social Security Numbers, 815 Ill. Comp. Stat § 505/2RR, and the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. § 510/2(a);

f.  Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff Bussell's and Illinois Subclass Members' Private Information; and

g.  Omitting, suppressing, and concealing the material fact that they did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Bussell's and Illinois Subclass Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, Illinois laws regulating the use and disclosure of Social Security Numbers, 815 Ill. Comp. Stat § 505/2RR, and the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. § 510/2(a).

254.  NationsBenefits' representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of NationsBenefits' data security and ability to protect the confidentiality of consumers' Private Information.

255.     The above unfair and deceptive practices and acts by NationsBenefits were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiff Bussell and Illinois Subclass Members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

256.     As a direct and proximate result of NationsBenefits' unfair, unlawful, and deceptive trade practices, Plaintiff Bussell and Illinois Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, as described herein, including but not limited to fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; loss of value of their Private Information; overpayment for NationsBenefits' services; loss of the value of access to their Private Information; and the value of identity protection services made necessary by the Breach.

257.     Plaintiff Bussell and Illinois Subclass Members seek all monetary and non-monetary relief allowed by law, including injunctive relief and reasonable attorney's fees.

**COUNT 13**
**TEXAS DECEPTIVE TRADE PRACTICES—CONSUMER PROTECTION ACT**
**Texas Bus. & Com. Code §§ 17.41, *et seq.***
**(On behalf of Plaintiff Emery, Plaintiff Stone, and the Texas Subclass)**

258.     Plaintiff Emery and Plaintiff Stone individually, and on behalf of the Texas Subclass, repeats and realleges all allegations if fully set forth herein.

259.     NationsBenefits is a "person," as defined by Tex. Bus. & Com. Code § 17.45(3).

260.     Plaintiff Emery and Plaintiff Stone and members of the Texas Subclass are "consumers," as defined by Tex. Bus. & Com. Code § 17.45(4).

261.    NationsBenefits advertised, offered, or sold goods or services in Texas and engaged in trade or commerce directly or indirectly affecting the people of Texas, as defined by Tex. Bus. & Com. Code § 17.45(6).

262.    NationsBenefits engaged in false, misleading, or deceptive acts and practices, in violation of Tex. Bus. & Com. Code § 17.46(b), including:

a.    Representing that goods or services have approval, characteristics, uses, or benefits that they do not have;

b.    Representing that goods or services are of a particular standard, quality or grade, if they are of another; and

c.    Advertising goods or services with intent not to sell them as advertised;

d.    Failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

263.    NationsBenefits' false, misleading, and deceptive acts and practices include:

a.    Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs Emery' and Texas Subclass Members' Private Information, which was a direct and proximate cause of the Data Breach;

b.    Failing to identify and remediate foreseeable security and privacy risks and adequately improve security and privacy measures despite knowing

the risk of cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c.   Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs Emery's and Texas Subclass Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, and Texas's data security statute, Tex. Bus. & Com. Code § 521.052, which was a direct and proximate cause of the Data Breach;

d.   Misrepresenting that they would protect the privacy and confidentiality of Plaintiffs Emery' and Texas Subclass Members' Private Information, including by implementing and maintaining reasonable security measures;

e.   Misrepresenting that they would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs Emery' and Texas Subclass Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, and Texas's data security statute, Tex. Bus. & Com. Code § 521.052;

f.   Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs Emery' and Texas Subclass Members' Private Information; and

g.   Omitting, suppressing, and concealing the material fact that they did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs Emery' and Texas Subclass Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, and Texas's data security statute, Tex. Bus. & Com. Code § 521.052.

264. NationsBenefits intended to mislead Plaintiff Emery, Plaintiff Stone, and the Texas Subclass and induce them to rely on its misrepresentations and omissions.

265. NationsBenefits' representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of NationsBenefits' data security and ability to protect the confidentiality of consumers' Private Information.

266. Had NationsBenefits disclosed to Plaintiff Emery and members of the Texas Subclass that its data systems were not secure and, thus, vulnerable to attack, NationsBenefits would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. NationsBenefits was trusted with sensitive and valuable Private Information regarding millions of consumers, including Plaintiff Emery, Plaintiff Stone, and the Texas Subclass. NationsBenefits accepted the responsibility of protecting the data while keeping the inadequate state of its security controls secret from the public. Accordingly, Plaintiff Emery, Plaintiff Stone, and the Texas Subclass acted reasonably in relying on NationsBenefits' misrepresentations and omissions, the truth of which they could not have discovered.

267. NationsBenefits had a duty to disclose the above facts due to the circumstances of this case, the sensitivity and extensivity of the Private Information in its possession, and the generally accepted professional standards. Such a duty is implied by law due to the nature of the relationship between consumers, including Plaintiff Emery, Plaintiff Stone, and the Texas Subclass, and NationsBenefits because consumers are unable to fully protect their interests regarding their data, and placed trust and confidence in NationsBenefits. NationsBenefits' duty to disclose also arose from its:

a. Possession of exclusive knowledge regarding the security of the data in its systems;

b. Active concealment of the state of its security; and/or

c. Incomplete representations about the security and integrity of its computer and data systems, and its prior data breaches, while purposefully withholding material facts from Plaintiffs and the Texas Subclass that contradicted these representations.

268. NationsBenefits engaged in unconscionable actions or courses of conduct, in violation of Tex. Bus. & Com. Code Ann. § 17.50(a)(3). NationsBenefits engaged in acts or practices which, to consumers' detriment, took advantage of consumers' lack of knowledge, ability, experience, or capacity to a grossly unfair degree.

269. Consumers, including Plaintiff Emery, Plaintiff Stone, and the Texas Subclass, lacked knowledge about deficiencies in NationsBenefits' data security because this information was known exclusively by NationsBenefits. Consumers also lacked the ability, experience, or capacity to secure the Private Information in NationsBenefits' possession or to fully protect their interests regarding their data. Plaintiff Emery, Plaintiff Stone, and the Texas Subclass lack expertise in information security matters and do not have access to NationsBenefits' systems to evaluate its security controls. NationsBenefits took advantage of its special skill and access to Private Information to hide its inability to protect the security and confidentiality of Plaintiff Emery's, Plaintiff Stone's, and the Texas Subclass' Private Information.

270. NationsBenefits intended to take advantage of consumers' lack of knowledge, ability, experience, or capacity to a grossly unfair degree, with reckless disregard of the unfairness that would result. The unfairness resulting from NationsBenefits' conduct is glaringly

noticeable, flagrant, complete, and unmitigated. The Data Breach which resulted from NationsBenefits' unconscionable business acts and practices, exposed Plaintiff Emery, Plaintiff Stone, and the Texas Subclass to a wholly unwarranted risk to the safety of their Private Information and the security of their identity or credit and worked a substantial hardship on a significant and unprecedented number of consumers. Plaintiff Emery, Plaintiff Stone, and the Texas Subclass cannot mitigate this unfairness because they cannot undo the Data Breach.

271.    NationsBenefits acted intentionally, knowingly, and maliciously to violate Texas's Deceptive Trade Practices-Consumer Protection Act, and recklessly disregarded Plaintiff Emery's, Plaintiff Stone's, and the Texas Subclass' rights.

272.    As a direct and proximate result of NationsBenefits' unconscionable and deceptive acts or practices, Plaintiff Emery, Plaintiff Stone, and the Texas Subclass have suffered and will continue to suffer injury, ascertainable losses of money or property, non-monetary damages, as described herein, including but not limited to fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; loss of value of their Private Information; overpayment for NationsBenefits' services; loss of the value of access to their Private Information; and the value of identity protection services made necessary by the Breach. NationsBenefits' unconscionable and deceptive acts or practices were a producing cause of Plaintiff Emery's, Plaintiff Stone's, and the Texas Subclass' injuries, ascertainable losses, economic damages, and non-economic damages, including their mental anguish.

273.    NationsBenefits' violations present a continuing risk to Plaintiff Emery, Plaintiff Stone, and the Texas Subclass as well as to the public.

274. Plaintiff Emery, Plaintiff Stone, and the Texas Subclass seek all monetary and non-monetary relief allowed by law, including economic damages; damages for mental anguish; treble damages for each act committed intentionally or knowingly; court costs; reasonably and necessary attorneys' fees; injunctive relief; and any other relief which the court deems proper.

**COUNT 14**
**WASHINGTON DATA BREACH NOTICE ACT**
**Wash. Rev. Code §§ 19.255.010, *et seq.***
**(On Behalf of Plaintiff Henry and the Washington Subclass)**

275. Plaintiff Henry, individually and on behalf of the Washington Subclass, repeats and realleges all preceding allegations as if fully set forth herein.

276. NationsBenefits is a business that owns or licenses computerized data that includes Private Information, as defined by Wash. Rev. Code § 19.255.010(1).

277. The Private Information of Plaintiff Henry and Washington Subclass Members includes Personal information as defined by Wash. Rev. Code § 19.255.005(2) and covered under Wash. Rev. Code § 19.255.010(1).

278. NationsBenefits is required to accurately notify Plaintiff Henry and Washington Subclass Members following discovery or notification of the breach of its data security system if Private Information was, or is reasonably believed to have been, acquired by an unauthorized person and the Private Information was not secured, in the most expedient time possible and without unreasonable delay under Wash. Rev. Code § 19.255.010(8).

279. Because NationsBenefits discovered a breach of its security system in which Private Information was, or is reasonably believed to have been, acquired by an unauthorized person and the Private Information was not secured, NationsBenefits had an obligation to disclose the data breach in a timely and accurate fashion as mandated by Wash. Rev. Code §

19.255.010, including by identifying in the notice the types of Private Information that were subject to the breach.

280. By failing to disclose the NationsBenefits data breach in a timely and accurate manner and failing to provide the information required, NationsBenefits violated Wash. Rev. Code § 19.255.010(1).

281. As a direct and proximate result of NationsBenefits' violations of Wash. Rev. Code § 19.255.010(1), Plaintiff Henry and Washington Subclass Members suffered damages, as described above.

282. Plaintiff Henry and Washington Subclass Members seek relief under Wash. Rev. Code §§ 19.255.040(3)(a) and 19.255.040(3)(b), including actual damages and injunctive relief.

**COUNT 15**
**WASHINGTON CONSUMER PROTECTION ACT**
**Wash. Rev. Code §§ 19.86.020, *et seq.***
**(On Behalf of Plaintiff Henry and the Washington Subclass)**

283. Plaintiff Henry, individually and on behalf of the Washington Subclass, repeats and realleges all preceding allegations as if fully set forth herein.

284. NationsBenefits is a "person," as defined by Wash. Rev. Code § 19.86.010(1).

285. NationsBenefits advertised, offered, or sold goods or services in Washington and engaged in trade or commerce directly or indirectly affecting the people of Washington, as defined by Wash. Rev. Code § 19.86.010 (2).

286. NationsBenefits engaged in unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of Wash. Rev. Code § 19.86.020, including:

287. Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff Henry's and Washington Subclass Members' Private Information, which was a direct and proximate cause of the Data Breach;

288.     Failing to identify and remediate foreseeable security and privacy risks and adequately improve security and privacy measures despite knowing the risk of cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

289.     Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Henry's and Washington Subclass Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, and Washington's data security statute, F.S.A. § 501.171(2), which was a direct and proximate cause of the Data Breach;

290.     Misrepresenting that they would protect the privacy and confidentiality of Plaintiff Henry's and Washington Subclass Members' Private Information, including by implementing and maintaining reasonable security measures;

291.      Misrepresenting that they would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Henry's and Washington Subclass Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, and Washington's data security statute, F.S.A. § 501.171(2);

292.     Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff Henry's and Washington Subclass Members' Private Information; and

293.     Omitting, suppressing, and concealing the material fact that they did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Henry's and Washington Subclass Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, and Washington's data security statute, F.S.A. § 501.171(2).

294.     NationsBenefits' representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of NationsBenefits' data security and ability to protect the confidentiality of consumers' Private Information.

295.     NationsBenefits acted intentionally, knowingly, and maliciously to violate Washington's Consumer Protection Act, and recklessly disregarded Plaintiff and Washington Subclass Members' rights. NationsBenefits' numerous past data breaches put it on notice that its security and privacy protections were inadequate.

296.     NationsBenefits' conduct is injurious to the public interest because it violates Wash. Rev. Code Ann. § 19.86.020, violates a statute that contains a specific legislation declaration of public interest impact, and/or injured persons and had and has the capacity to injure persons.

### COUNT 16
### DECLARATORY AND INJUNCTIVE RELIEF
**(On behalf of the Nationwide Class, or alternatively, the Subclasses)**

297.     Plaintiffs re-allege and incorporate by reference all preceding allegations as if fully set forth herein.

298.     Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the statutes described in this Complaint.

299.     An actual controversy has arisen in the wake of the Data Breach regarding NationsBenefits' present and prospective common law and statutory duties to reasonably safeguard its customers' sensitive personal information and whether NationsBenefits are currently maintaining data security measures adequate to protect Plaintiffs and Class Members

from further data breaches. Plaintiffs alleges that NationsBenefits' data security practices remain inadequate.

300.    Plaintiffs and Class Members continue to suffer injury as a result of the compromise of their sensitive personal information and remain at imminent risk that further compromises of their personal information will occur in the future.

301.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring that NationsBenefits continues to owe a legal duty to secure consumers' sensitive personal information, to timely notify consumers of any data breach, and to establish and implement data security measures that are adequate to secure customers' sensitive personal information.

302.    The Court also should issue corresponding prospective injunctive relief requiring NationsBenefits to employ adequate security protocols consistent with law and industry standards to protect consumers' sensitive personal information.

303.    If an injunction is not issued, Plaintiffs and Class Members will suffer irreparable injury, for which they lack an adequate legal remedy. The threat of another data breach is real, immediate, and substantial. If another breach at NationsBenefits occurs, Plaintiffs and Class Members will not have an adequate remedy at law, because not all of the resulting injuries are readily quantified and they will be forced to bring multiple lawsuits to rectify the same conduct.

304.    The hardship to Plaintiffs and Class Members if an injunction does not issue greatly exceeds the hardship to NationsBenefits if an injunction is issued. If another data breach occurs at NationsBenefits, Plaintiffs and Class Members will likely be subjected to substantial identify theft and other damages. On the other hand, the cost to NationsBenefits of complying

with an injunction by employing reasonable prospective data security measures is relatively minimal, and NationsBenefits have a pre-existing legal obligation to employ such measures.

305.    Issuance of the requested injunction will serve the public interest by preventing another data breach at NationsBenefits, thus eliminating the additional injuries that would result to Plaintiffs and the millions of consumers whose confidential information would be further compromised.

## REQUEST FOR RELIEF

Plaintiffs, on behalf of all others similarly situated, request that the Court enter judgment against NationsBenefits including the following:

A.    Determining that this matter may proceed as a class action and certifying the Classes asserted herein;

B.    Appointing Plaintiffs as representative of the applicable Classes and appointing Plaintiffs' counsel as Class counsel;

C.    An award to Plaintiffs and the Classes of compensatory, consequential, statutory, restitution, and treble damages as set forth above;

D.    Ordering injunctive relief requiring NationsBenefits to, among other things: (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems; (iii) provide several years of free credit monitoring and identity theft insurance to all Class Members; (iv) timely notify consumers of any future data breaches; and (v) delete or destroy any legacy consumer data that it is not necessary to keep for business purposes;

E.    Entering a declaratory judgment stating that NationsBenefits owe a legal duty to secure its student loan borrowers' sensitive personal information, to timely notify consumers of

any data breach, and to establish and implement data security measures that are adequate to secure sensitive personal information;

F.     An award of attorneys' fees, costs, and expenses, as provided by law or equity;

G.     An award of pre-judgment and post-judgment interest, as provided by law or equity; and

H.     Such other relief as the Court may allow.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury for all issues so triable.

Respectfully submitted,

DATED: May 12, 2023          DWOSKIN WASDIN LLP
Eric S. Dwoskin (112459)


*Eric S. Dwoskin*
ERIC S. DWOSKIN

433 Plaza Real, Ste. 275
Boca Raton, FL 33432
Tel. 561/849-8060
edwoskin@dwowas.com

Ian W. Sloss*
Steven L. Bloch*
Brett Burgs*
**SILVER GOLUB & TEITELL LLP**
One Landmark Square, Floor 15
Stamford, Connecticut 06901
Telephone: (203) 325-4491
Fax: (203) 325-3769
isloss@sgtlaw.com
sbloch@sgtlaw.com
bburgs@sgtlaw.com

Joseph P. Guglielmo*
Erin G. Comite*
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**

The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile: (212) 223-6334
jguglielmo@scott-scott.com
ecomite@scott-scott.com

*Pro hac vice* forthcoming.